UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LAMBERT,<br><br>        *Plaintiff*,<br><br>  -against-<br><br>LPQ USA, LLC,<br><br>        *Defendant.* | Case No. 1:23-cv-02934-KPF<br><br>**AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

James Lambert ("Plaintiff") upon personal knowledge, and upon information and belief, brings this action and equitable relief against defendant LPQ USA, LLC ("Defendant") for violations of the New York York Labor Law ("NYLL") and any other causes of action that can be inferred from the facts set forth herein:

**PARTIES**

1. Plaintiff was, at all relevant times, an adult individual residing in the State of New York, County of Kings.

2. Plaintiff and the Proposed Class were, throughout their entire employment with Defendant, covered, non-exempt employees within the meaning of the NYLL.

3. Plaintiff and the Proposed Class worked for Defendant at worksites located throughout New York City, and were required to wear uniforms during the employment, and were not paid required uniform maintenance pay pursuant to 12 NYCRR 142-2.5(c).

4. Throughout the relevant time period, Plaintiff performed work for Defendant at a worksite located at 2161 Broadway, New York, New York 10024.

5. Defendant LPQ USA, LLC is, and was at all relevant times herein, a foreign limited liability

company, organized in New York County and existing under the laws of the State of Delaware, with a service of process address in the care of The LLC at 56 West 22nd Street, 2nd Floor, New York, New York 10010. LPQ USA, LLC is the entity listed on Plaintiff's pay stubs with an address of 56 West 22nd Street, 2nd Floor, New York, New York 10010.

6. LPQ USA LLC operates at least 35 restaurants in New York under the brand Le Pain Quotidien.

7. Defendant is considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

8. Each restaurant follows the same format and operates under the same policies and procedures with respect to employee pay and duties.

9. At all relevant times, Plaintiff was an "employee" within the meaning of NYLL §190(2) and a "manual worker" within the meaning of NYLL §190(4).

10. The Defendant was and is a covered "employer" within the meaning of the NYLL §190(3).

11. Plaintiff was employed by Defendant from or about April 12, 2022, through on or about September 8, 2022.

## CLASS ALLEGATIONS

12. Plaintiff brings this action on behalf of herself and all other similarly situated non-exempt hourly paid employees of Defendant in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the "Class Period").

13. Plaintiff hereby states that the Class Period shall to the extent permitted by law be expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020

executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar order, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

14. Defendant required Plaintiff and the proposed class to wear a uniform including a shirt with company logo.

15. This action is properly maintainable as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules. Plaintiff bring this action on her own behalf and as a class consisting of:

> All current and former Le Pain Quotidien Restaurant workers in New York employed by Defendants during the Class Period and who were required to wear a shirt, apron, and hat, to work.

16. The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to the Plaintiffs, and calculation of such number would require facts in the sole control of Defendants, upon information and belief the size of the Class is believed to be in excess of 200 individuals. In addition, the names of all potential members of the Class are not known.

17. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

18. There is no conflict between Plaintiff and any other member of the Class.

19. The questions of law and fact common to the Class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to, the following:

    1. Whether Defendant required a uniform?

    2. How many of each uniform were provided?

    3. How many hours per week did the employee work for purposes of determining entitlement to the "low", "middle" or "high" rate for uniform maintenance pay as per 12 NYCRR § 146-1.7?

    4. For how many uniforms did the employer reimburse the employee to purchase and wear at work?

    5. What were the number of regularly scheduled work shifts per week?

    6. Whether Defendant failed to reimburse the cost of purchasing a required uniform?

    7. Whether Defendant laundered or offered to launder the required uniforms?

    8. At what frequency was the employee paid?

20. The claims of Plaintiff are typical to the claims of the Class because they are all current or former employees of Defendant who sustained damages, including underpayment of wages as a result of Defendant's common compensation policies and practices. The defenses that Defendant is likely to assert against the Plaintiff's claims are typical of the defenses that Defendant is likely to assert against the Class.

21. Plaintiff and his counsel Mohammed Gangat, Esq. will fairly and adequately protect the interests of the Class.

22. Plaintiff has retained counsel experienced in complex wage and hour class action litigation.

23. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff and the Class members lack the financial resources to adequately prosecute separate lawsuits against Defendant. A class action will also prevent unduly

duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's policies.

## FACTS

24. All of the below factual allegations are, upon information and belief, consistent among Plaintiff and all members of the Class.

25. During his employment, Plaintiff worked for Defendant in their building located at 2161 Broadway, New York, New York 10024.

26. The employment began with Barista Training which lasted several days.

27. When he first started Plaintiff informed Defendant he did not have any preferred workdays.

28. Defendant responded that he would regularly work Friday - Tuesday.

29. When he first started Plaintiff informed Defendant he preferred to work the morning shift, and Defendant said he would be regularly scheduled to work mornings.

30. Defendant provided Plaintiff his schedule and schedule changes through an app called 7Shift.

31. Throughout the employment, this regular schedule was altered with less than two weeks notice. Notice of changes were made available on Thursday or Friday and applied to the week after next.  For example, he would receive a schedule on September 1, 2022, and it would cover the period September 11-17, 2022.

32. For the last 3 - 4 months of the employment, every week, between 2 - 4 times per week, Defendant told Plaintiff to end his work shift earlier than scheduled because the store was not busy and the store wanted to save money by cutting back on staffing on-the-fly.

33. The store operated with two shifts, a morning shift and afternoon shift.  Plaintiff usually

worked the morning shift, and often, when the afternoon shift began to arrive around noon, the manager would make an assessment of staffing needs, and then determine Plaintiff would end his shift early at 12:30 or 1pm.

34. When he was hired, Mario, a District Manager with the Defendant, informed Plaintiff, that Plaintiff was required to wear the following items to work: (i) dark blue or black pants; (ii) a black shirt provided by Defendant with Defendant's logo appearing on the front; and (iii) a hairnet or chef's hat with Defendant's logo appearing on the front.

35. Plaintiff and other restaurant workers were also required to wear an apron. However, the apron was left at the store and maintained by the store.

36. At the start of the employment Plaintiff was provided with two of the required shirts.

37. He never received additional shirts.

38. This was not enough shirts for him to be able to wear a clean shirt every week without washing the items multiple times each week.

39. Plaintiff worked in the restaurant as a barista.

40. Plaintiff mostly made espresso drinks as a barista.

41. Plaintiff worked occasional spread of hours shifts which are shifts in excess of ten hours per day. Plaintiff was paid the required spread of hours pay.

42. Plaintiff's days worked per week varied but he often worked five days per week and occasionally more than five days per week during the employment.

43. In addition to making drinks, Plaintiff was responsible for stocking the kitchen, including cutting fruits, restocking items in the fridge, restocking the barista counter, and bringing items from the basement storage to the kitchen.

44. Plaintiff was also responsible for making large vats of iced teas and iced coffees which would be used throughout the week.

45. On Sunday, September 4, 2022, Plaintiff was scheduled to work from 6:30 to 2:30 or something thereabout.

46. Prior to his scheduled shift, at approximately 5am, Plaintiff called in sick using the option to do that on the app provided by the employer.

47. The app then informed other employees that the shift needed coverage.

48. Plaintiff was ill on that day and could not go to work.

49. The following day Plaintiff was scheduled to work another regular shift.

50. When he arrived, one of the managers at the store, Joel, sent Plaintiff home.

51. Joel approached Plaintiff and said that Plaintiff was wearing pants that were not acceptable for work.

52. Joel also said Plaintiff needed to provide a sick note for the prior day.

53. Joel then sent Plaintiff home.

## FIRST CAUSE OF ACTION
### UNIFORM MAINTENANCE PAY - ON BEHALF OF THE CLASS

54. Defendant required Plaintiff to wear a uniform consisting of a shirt and a hat emblazoned with Defendant's logo.

55. Plaintiff worked five days per week but was only given two shirts.

56. Defendant was required to provide Plaintiff and the Proposed Class with a number of uniforms consistent with the average number of days worked per week or to compensate them with a uniform maintenance pay in order to pay for the maintenance of the uniform.

57. Defendant did not launder the required uniform, nor did Defendant offer to launder them.

58. Plaintiff's uniforms were issued by Defendant for the expressed benefit of Defendant, and it was a condition of their employment to wear them during each shift.

59. Defendant never paid Plaintiff any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

60. Defendant never paid to Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms in accordance with 12 N.Y.C.R.R. § 146-1.7.

61. Defendant's conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations.

62. Plaintiff and the Class are entitled to recover damages including unpaid uniform maintenance pay, prejudgment interest, and prevailing party attorneys' fees and expenses.

## SECOND CAUSE OF ACTION

## FAIR WORKWEEK LAW VIOLATIONS

63. Pursuant to the Fair Workweek Law, no later than when a new fast food employee receives such employee's first work schedule, a fast food employer shall provide such employee with a written copy of their regular schedule including the number of hours a fast food employee can expect to work per week for the duration of the employee's employment and the expected days, times and locations of those hours.

64. Pursuant to the Fair Workweek Law, a fast food employer shall provide a fast food employee with written notice of a work schedule containing regular shifts and on-call shifts on or before the employee's first day of work. For all subsequent work schedules, the fast food employer shall provide such notice no later than 14 days before the first day of any new schedule. Such work schedule shall span a period of no less than seven days and contain all anticipated regular shifts and on-call shifts that the employee will work or will be required to be available to work during the work schedule.

65. Where a regular schedule is not provided 14 days in advance, and schedules are provided on shorter notice, and where changes to such schedules are made, the Fair Workweek Law considers those violations and has a schedule to assess civil penalties owed and payable to Plaintiff. § 20-1222.

66. In accordance with Fair Workweek Law, § 20-1211(b), Plaintiff and the Proposed Sub-Class for these violations is entitled to all civil penalties, plus compensatory damages to make the employee whole in an amount no less than $100 per violation, injunctive and declaratory relief, and prevailing party attorneys' fees and expenses.

## THIRD CAUSE OF ACTION

### CALL IN PAY

67. New York requires that employers pay a minimum of four hours when they report to worksites on their regularly scheduled shifts but are sent home for weather or other reasons.

68. Throughout the respective employment periods, Plaintiff was paid on an hourly basis.

69. Plaintiff reported to work on Monday September 5, 2022, for a regular 8 hour shift and was sent home.

70. Plaintiff was not paid anything for that day.

71. Plaintiff should have been paid for at least three hours on those days in accordance with 12 NYCRR 146-1.5.

72. Plaintiff is entitled to recover from Defendant maximum compensation for those unpaid hours, including unpaid wages, liquidated damages thereon, prejudgment interest, and attorneys' fees and expenses.

**WHEREFORE**, Plaintiff prays for judgment as against the Defendant as follows:

    a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

    b. Preliminary and permanent injunctions against Defendant and their agents, employees, representatives, and any and all persons acting in concert with him, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

    c. An order restraining Defendant from any retaliation against any individual for participating in any form in this lawsuit;

    d. All damages that Plaintiff has sustained as a result of the Defendant's conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff would have received but for the Defendant's unlawful payment practices;

    e. Declaring Defendant's violations of the NYLL were willful;

    f. Liquidated damages and any other statutory penalties as recoverable under the NYLL;

    g. Awarding Plaintiff his costs and disbursements incurred regarding this action, including reasonable attorneys' fees, expert witness fees, and other costs;

    h. Awarding punitive damages;

    i. Prejudgment and post-judgement interest, as provided by law;

j.  Awarding such other and further relief as available under the statues; and

k.  Granting Plaintiff other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, NY
May 4, 2023

**LAW OFFICE OF MOHAMMED GANGAT**

Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810,
New York, NY 10017
mgangat@gangatpllc.com
718-669-0714

*Attorneys for Plaintiff*